## JAMES DALTON *vs.* JAMES SAVAGE & others.

E bequeathed all her shares or stock in two insurance offices to her sister M., to receive the interest or dividends thereof during M.'s life, and, at her decease, to S. and her children: S. then had two children, J. and G., and never had any others: E's executor received, from one of the insurance offices, $262·50, as a dividend of the capital stock thereof, and paid the same to M.: S. and G. died, and J. was administrator of their estates: J. assigned to D. all his right, title, property and claim in and to the shares bequeathed by E., and all his right, title, interest and property in and to any other stocks or estates in which the proceeds of said shares might be thereafter invested, and covenanted that he was the sole and lawful owner of said shares, subject to the right of M. to receive the income thereof during life, and that he would make such further assurance as should be requisite to perfect the intent of the assignment; neither D. nor J. then knowing that said $262·50 had been paid to M. as a dividend of capital: Afterwards, E.'s executor, though he had notice of said assignment, made an absolute conveyance of said shares to M., who bequeathed the same and other property to her executor, upon certain trusts: D. brought a bill in equity against M.'s executor, to compel him to assign said shares to D., and to pay him the dividends received after M.'s death, and also said sum of $262·50.

*Held,* that on the death of E., S. and her two children, J. and G., took a certain interest in the remainder bequeathed to them; that, whether this was vested or contingent, J., after the death of S. and G., became entitled to one third of the whole bequest to them, in his own right, and to two thirds, as administrator of their estates; and that he had a right to sell or transfer the same for his own benefit. *Held also,* that the $262·50 passed to D. by the assignment of J. *Held also,* that although the conveyance of the shares to M. by E.'s executor was a breach of trust, yet the legal title thereto passed to M. by the conveyance, and that she took them subject to a trust in favor of J., and that her executor was bound to assign them to D., and pay to D. all dividends received thereon after M.'s death, and also said sum of $262·50.

THE plaintiff alleged, in a bill in equity, that Elizabeth Blanchard, by her last will, executed on the 18th of October 1817, and duly allowed and approved on the 13th of Septem-

Dalton *v.* Savage & others.

ber 1824, made the following bequest: " I give all my shares or stock in the New England Insurance Office, and Fire and Marine Insurance Office, in Boston, to my sister Mary Blanchard; that is to say, I give her the interest or dividends thereof, as they shall from time to time become due, for her to receive the same, so long as she shall live ; and at her decease, I give said shares or stock to Mrs. Sarah Blanchard, wife of George Blanchard, and to her children : And I do appoint David W. Bradlee executor of this will : " That, at the time of said Elizabeth's decease, she was possessed of two shares of the stock of the New England Marine Insurance Company, of the par value of $100 each, and of twenty one shares of the stock of the Massachusetts Fire and Marine Insurance Company, of the par value of $50 each : That said Sarah Blanchard, at the time of said Elizabeth's decease, was living, a widow, with two children, viz. James T. Blanchard and George Blanchard : That said Sarah, in the year 1828, died intestate, and the said James T. was appointed administrator of her estate, and administered thereon : That said George was lost at sea, (but at what time is unknown,) and died intestate, and the said James T., in 1830, was appointed administrator of his estate, and administered thereon : That by virtue of the aforesaid bequest in the will of said Elizabeth, the said Sarah, James T. and George took a joint interest in said shares of stock, subject to the life interest of the said Mary, and contingent upon their surviving her ; and that upon the decease of the said Sarah and George, the said James T. became entitled to the same, subject to the life interest of said Mary, and could lawfully assign his interest therein : That the said James T., on the 7th of September 1831, borrowed and received of the plaintiff $1000, and executed and delivered to him the following instrument : " I, James T. Blanchard, in consideration of $1000 paid me by James Dalton, do hereby sell, assign and transfer unto him all my right, title, property and claims, in and to those certain shares of the corporate stocks and estates of the New England Marine Insurance Company, and of the Massachusetts Fire and Ma-

3 *

rine Insurance Company, formerly belonging to Elizabeth Blanchard, and the income whereof she bequeathed to Mary Blanchard, during her life, and which shares the said testatrix bequeathed, at the death of the said Mary, to belong to Sarah Blanchard and her children; the said Sarah being deceased, and I being her only surviving child; the said shares now standing or being in the name of the said Elizabeth or of David W. Bradlee, executor of the will of the said Elizabeth," &c. "And all my right, title, interest and property, in and to any other stocks or estates in which the proceeds of the said shares may be, at any time hereafter, invested. To hold the same to the said Dalton, his heirs, executors, administrators and assigns forever; but in trust, as collateral security for the payment of a promissory note, bearing even date herewith, signed by me, payable to my own order, and indorsed by me to the said Dalton, for said sum of $1000, on demand, with interest," &c. "And upon failure of payment of said note, at any time within ten days after demand made, then in trust to sell the said shares, or any other stocks or estates in which the proceeds thereof may be invested, and the proceeds of such sale to apply in and towards the payment of said note, and the surplus, if any, to pay to me, or my order in writing. And upon payment of said note, at any time before such sale, then in trust to retransfer the same to me or my legal representatives. And, for the purposes aforesaid, I do hereby constitute the said Dalton, his executors, administrators and assigns, to be my lawful attorneys, irrevocable during the continuance of these trusts, to demand and receive from the said Bradlee, or his successor in said office of executor, the said shares and other stocks and estates, at the decease of the said Mary, in my name or otherwise, but to their sole use, upon the trusts aforesaid," &c. "And I do covenant that I am the sole and lawful owner of said shares, subject to the right of the said Mary to receive the income thereof during her life," &c., "and that I will, at any time or times, as often as thereto reasonably requested, execute and deliver to the said Dalton, his execu-

tors, administrators and assigns, such further deeds, assurances, and letters of attorney, as may be requisite or expedient in order to perfect the intent of these presents. James T. Blanchard. (seal.)"

The plaintiff further alleged, in his bill, that said David W. Bradlee accepted the trusts and performed the duties of executor of the will of said Elizabeth; and that the plaintiff duly gave notice to him, on the 23d of July 1832, of the foregoing deed of assignment, by exhibiting the same to him : That said Bradlee continued to act as trustee under said will, and to pay the income and dividends of said shares to the said Mary, until his death, which was in November 1833: That after the decease of said Bradlee, George Murdock was appointed administrator *de bonis non* of said Elizabeth, with her will annexed ; and that, in March 1834, the existence of the foregoing deed of assignment was notified to said Murdock ; but that he, without the knowledge or consent of the said James T., or of the plaintiff, afterwards made an absolute transfer of said shares to the said Mary Blanchard.

The plaintiff further alleged, in his bill, that said Mary did not, by the transfer aforesaid, become the absolute owner of said shares, but she thereafter held them in trust, for her own benefit during her life, and could not legally sell or transfer the same, nor dispose thereof by will; but that, upon her decease, the same would become the absolute property of the said James T. and his assigns : That divers sums of money, viz. the sum of $100 upon each share, were received by the said Mary, as dividends of *capital* upon said two shares in the New England Marine Insurance Company; and that the same were received and held by her upon the trusts last above mentioned : That while the said Bradlee, as executor as aforesaid, held the said twenty one shares of the stock of the Massachusetts Mutual Fire and Marine Insurance Company, the sum of $262·50 was paid to him as a dividend of *capital* therein, which sum he paid over to said Mary, before the execution of the said deed of assignment to the plaintiff·

That when said deed of assignment was made, neither the plaintiff nor said James T. knew that payment of the sum last aforesaid had been made to said Mary, as a payment of a dividend of capital : That it was the intention of said James T. to assign to the plaintiff all his interest in said shares, or in any other estates or property in which the proceeds thereof were invested ; and that the plaintiff is entitled to receive the same.

The bill further alleged that the said Mary died in May 1843, having made her last will, whereby, after bequests of certain specific articles of personal property, she appointed James Savage (one of the defendants) her executor, and made to him the following devise : " I devise the rest and residue of my estate, real, personal, or otherwise, to my executor, in trust, *first*, to pay the interest and income thereof to my nephew, James T. Blanchard, semi-annually, or more often, if he shall think proper, for and during his natural life ; and I direct that my executor pay over to my said nephew one thousand dollars of the principal, if my said executor can well and safely insure the payment of the same into the hands of my said nephew, and not otherwise ; the thousand dollars to be paid as soon as the same can well be done ; *second*, at the decease of my nephew, James T. Blanchard, I give and bequeath what shall remain of said property devised in trust, to Henrietta Clark, Sarah L. Blanchard, and William B. Blanchard, or to such of them as shall then be living," &c. : That said will was duly approved and allowed, in June 1843, and that said Savage accepted said trust, and is now performing the same, and is in possession of the said shares of stock, and the sums of money received as dividends of capital thereof : That by reason of the facts above set forth, a trust has arisen, on the part of said Savage, executor as aforesaid, for the benefit of the plaintiff, to have said shares of stock transferred and said sums of money paid to him, to be disposed of according to said deed of assignment, and to be applied to the payment of said note, and the interest due thereon, and of the further sum of $150, which the plaintiff, upon the strength of said security

lent and advanced to said James T. on the 21st of April 1832, to be repaid on demand with interest.

The bill concluded with a statement of the amount due to the plaintiff from said James T. Blanchard; an averment that said Savage had refused, though requested, to transfer said stock to the plaintiff, or to pay him the sums received by said Mary as dividends of capital; and a prayer that said Savage, said James T., and the other persons named in said Mary's will as her legatees, might make answers, and that said Savage might be directed to transfer to the plaintiff the said shares, and pay to him the said sums of money.

The defendant Savage filed an answer, admitting the matters in the bill, which are stated as facts. · He also made the following statements : " After the decease of said Elizabeth, and before the execution of said contract by said James T. Blanchard, her executor received from said Massachusetts Fire and Marine Insurance Company $12·50 of the capital stock on each and every of the said twenty one shares. And the said shares, when transferred to said Mary, were of the par value of $37·50 each, and no more : That this respondent, as executor of said Mary, now holds said two shares in the New England Marine Insurance Company ; but the said Mary, a short time before her decease, received from said company $200 upon said two shares, being in dividends of a portion of the capital stock of said company ; and that the said shares are now of about the value of $7·50 each : That during the life time of the said Mary, the said Massachusetts Fire and Marine Insurance Company, being thereto legally authorized, received the certificates of shares in said company of the par value of $37·50 each, from the stockholders in said company, and issued certificates for new shares of $100 each ; issuing certificates of three shares of $100 each, for every eight shares of $37·50 each. And the said Mary then surrendered her certificates for certain other shares, held by and belonging to her, in said company, and received certificates of shares, each of the par value of $100. And this respondent now holds eleven and seven eighth shares in the Massachusetts Fire

and Marine Insurance Company, which are the fruits of the said twenty one shares; and he admits that the estate of said Mary, which has come to his hands, in addition to said shares, exceeds the sum of $262·50; being the amount received by said Mary from dividends of the capital on said two shares in the New England Marine Insurance Company, and the further sum of $262·50, which was the amount of the dividend of capital upon said shares in the Massachusetts Fire and Marine Insurance Company, received by said Bradlee."

The answer also admitted the receipt, by said Savage, of dividends on said shares in the Massachusetts Fire and Marine Insurance Company, before the filing of the bill.

The case was submitted to the court on the bill and the answer of said Savage.

The argument was had at the last March term.

*F. C. Loring,* for the plaintiff. Mary Blanchard took an interest in the insurance stock, for her life, remainder to Sarah Blanchard and her children. *Ellis* v. *Proprietors of Essex Merrimack Bridge,* 2 Pick. 243. Sarah and her children took a joint interest in the remainder. This interest was also *contingent,* till the death of Mary, and the contingency did not happen in the life time of Sarah or George. The joint interest, therefore, survived to James T., who became entitled to possession on the death of Mary. *Denny* v. *Allen,* 1 Pick. 147. *Emerson* v. *Cutler,* 14 Pick. 115. *Nash* v. *Cutler,* 16 Pick 496.

If Sarah, James T. and George took a *vested* interest in the bequest over, then James T., at the time of the assignment, had one third in his own right, and was entitled to the other two thirds, as representative and distributee of Sarah and George. And if the bequest over vested in Sarah alone, (rejecting the words "and her children," as inoperative,) James T., as one of her distributees, was entitled to a moiety of it, and, as the sole distributee of George, to the other moiety; and, as administrator on the estates of both, he held the legal interest, for his own benefit, and could lawfully assign it.

The assignment by James T. to the plaintiff is sufficiently

comprehensive to embrace the $262·50, which was paid to Elizabeth's executor, and by him to Mary, as a dividend of capital, before the execution of the assignment. For it mentions the shares formerly belonging to Elizabeth, and by her bequeathed; evidently including the identical shares. And this sum of $262·50 was a part of the value of those shares, and a part of what was intended to be assigned.

The plaintiff is entitled to all the dividends of profits which have been made on the shares since the death of Mary; because, at her death, they became his property, and from that time her executor held them in trust for the plaintiff.

*W. Gray,* for the defendants. Sarah Blanchard, and her children living at the death of Elizabeth, took a *vested* remainder in the stock bequeathed to Mary for life; and such a remainder will open to let in children afterwards born. *Annable* v. *Patch,* 3 Pick. 360. If so, what passed by the assignment? The mother and brother of James T. died before the assignment was made, and he was administrator of both of their estates. But though he might ultimately be entitled to the property, as heir of his mother and brother, yet it must first go into his hands as administrator, and be regularly accounted for as part of their estates. And he could not, by his assignment, transfer the rights which belonged to their estates. *Non constat* that there are not creditors of both estates, who are entitled to the interest of the deceased in the insurance stock. Though the assignment might purport to carry the whole shares, yet it would pass only such interest therein as the assignor could legally convey. *Ellis* v. *Proprietors of Essex Merrimack Bridge,* 2 Pick. 243. On this view of the case, the plaintiff is not entitled to more than one third of the shares, as they were at the time of the assignment. The plaintiff cannot substantiate a claim to the $262·50; for the assignment was of shares, and of any other stocks or estates in which the proceeds of the said shares might be thereafter invested. This does not include money which had been previously paid as a part of the capital of the shares.

But if the remainder, bequeathed to Sarah and her children,

was a *contingent* one, to vest in such of the legatees as should be alive at the death of Mary, was it the subject of a legal transfer? By the Rev. Sts. *c.* 60, § 30, "when any contingent remainder, executory devise, or other estate in expectancy, is so granted or limited to any person, that, in case of his death before the happening of the contingency, *the estate would descend to his heirs in fee simple,* such person may, before the happening of the contingency, sell, assign or devise the premises, subject to the contingency." Now, if this remainder be contingent, so that such only of the legatees as should survive Mary could take, then, if James T. had died before Mary, it would not have descended to his heirs, and would not come within the above provision of the revised statutes; and his interest would not be assignable. See *Hall* v. *Tufts,* 18 Pick. 455. *Rich* v. *Waters,* 22 Pick. 563.

*Loring,* in reply. A vested remainder in personal estate cannot open to let in after born children. *Dingley* v. *Dingley,* 5 Mass. 537. And it was not decided in *Annable* v. *Patch,* 3 Pick. 360, that the devisees took a vested remainder in the personal estate.

If James T. owned only one third in his own right, when he made the assignment, he was, in equity, owner of the other two thirds, and is estopped, by his deed, to set up that defence; as he covenanted that he was the lawful owner, and that he would make further assurances. Nor can the defendant Savage raise this objection.

The suggestion, that there may be creditors of Mary and George, who may be prejudiced, is of no force, unless they took a vested remainder, and died insolvent. Their insolvency is not shown nor suggested.

The clause cited from the Rev. Sts. *c.* 60, refers only to real estate, and is, therefore, of no force in this case.

In *Rich* v. *Waters,* cited for the defendants, it was held that a contingent remainder in personal estate is not *attachable ;* but contingent interests and claims have been repeatedly decided to be *assignable.* *Crocker* v. *Whitney,* 10 Mass. 319. *Cutts* v. *Perkins,* 12 Mass. 206. *Gardner* v. *Hoeg,* 18 Pick. 170.

WILDE, J. Since the arguments in this case were submitted to the court, the principal question here raised has been settled in the case of *Winslow* v. *Goodwin*, 7 Met. 363. It was there decided, that contingent interests, as well as vested interests, in real or personal property, pass to the personal representatives, according to the nature of such interests, so as to entitle such representatives to them when the contingency happens, if the party dies before the termination of the previous estate. This is fully established as the law of England, by numerous decisions; and such, it was decided, was the law of this Commonwealth, confirmed by *St.* 1805, *c.* 90, § 1, which was thus: " When any person shall die seized of any lands, tenements or hereditaments, or of any right thereto, or entitled to any interest therein, in fee simple, or for the life of another, not having lawfully devised the same, the same shall descend," &c. In § 2 there was a similar provision as to personal estate; and these provisions are reënacted in the Rev. Sts. *c.* 61, § 1, and *c.* 64, § 1. And it was decided that the statute extended to contingent as well as vested interests, in conformity with the principles of the common law.

Such contingent interests are also transmissible by devise, by our statute of devises, whether they are given by way of contingent remainder or by executory devise; and such is clearly the rule of the common law, unless, by the terms of the gift or devise, it is so limited that the devisee of the contingent interest is not to take the same if he be not living at the time when the prior estate terminates, or at some particular time. As, for instance, if the remainder had been given to Sarah Blanchard, and to her children living at the time of the decease of Mary Blanchard, such a contingent interest would not have been transmissible to an heir or devisee. In the present case, on the death of the testatrix, Sarah Blanchard and her two sons took a certain interest in the remainder bequeathed to them; and whether it was vested or contingent is not material.

Upon these principles, it is clear that James T. Blanchard

after the death of his mother and brother, became entitled to the whole bequest to them. As the contingency ceased by the death of his mother, the remainder vested in him, one third in his own right, and two thirds as administrator of the estates of his mother and brother. And it is equally clear that he had a right to sell or transfer the same, as security, for his own use and benefit.

It is objected, that there may be creditors who might be prejudiced by such transfer. But this does not appear. And if there are creditors, they cannot be prejudiced; for the administrator and his bondsmen are liable, if the creditors' claims are not barred by the statute of limitations, or otherwise.

It is also objected, that the $262·50, which was paid out of the shares in the capital stock of the Massachusetts Fire and Marine Insurance Company, before the assignment to the plaintiff, could not pass thereby. But we are of opinion that this is not the true construction of the assignment. It transfers, in terms, all the assignor's right, title, property and claims, in and to the shares of stock formerly owned by Elizabeth Blanchard, and by her bequeathed to Mary Blanchard for life, and, on her decease, to Sarah Blanchard and her children; and also all his right, title, interest and property, in and to any other stock or estates, in which the proceeds of the said shares may be at any time thereafter invested. There is also a covenant that the shares had not been incumbered, and for further assurances. It appears that the assignor was ignorant, at the time of the assignment, that any part of the capital stock had been paid in. But it is manifest that the whole trust fund was intended to be assigned, whatever might be its condition. And so, we think, the assignment is to be construed. The plaintiff, therefore, is entitled to the whole trust fund, to hold the same as security, according to the terms of the assignment.

The transfer of these shares, by the executor of the trustee, to Mary Blanchard, was a breach of trust; but the legal title passed to her, and she took them subject to the trust. And her executor is bound by the same trust. He is therefore

obligated to transfer to the plaintiff the shares he holds in trust, and to pay over to him the sums of money, received by Mary Blanchard as dividends of capital, and such dividends of profits as he has received since her decease ; and a decree to that effect is to be entered.